UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JACOB GOLDSTEIN,

                                              Plaintiff,

                                                                                **VERIFIED COMPLAINT**
                                                                                **WITH JURY DEMAND**

-against-

                                                                                DATE PURCHASED:
                                                                                INDEX #:

ERIC ADAMS, INGRID LEWIS-MARTIN,
LAURIE CUMBO, AND CITY OF NEW YORK
                                              Defendants.
--------------------------------------------------------------------X

Plaintiff, Jacob Goldstein, through his attorney Tamara Harris, Esq., alleges as follows:

## THE PARTIES

1. Plaintiff Jacob Goldstein resides at 564 Montgomery Street, Brooklyn, New York 11225.

2. Defendant Eric Adams maintains a principal place of business at 209 Joralemon Street, Brooklyn, New York 11201.

3. Defendant Ingrid Lewis-Martin maintains a principal place of business at 209 Joralemon Street Brooklyn, New York 11201.

4. Defendant Laurie Cumbo is a New York City Council member who maintains a principal place of business at 1 Hanson Place, Suite 201, Brooklyn, New York 11243.

## JURISDICTION

5. Jurisdiction lies in the United States District Court Eastern District of New York based on the existence of a federal question.

## FIRST CAUSE OF ACTION- DEFENDANTS ERIC ADAMS AND INGRID LEWIS-MARTIN VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS UNDER 42 U.S.C.S § 1983 BY RETALIATING AGAINST PLAINTIFF FOR SPEAKING ABOUT A MATTER OF PUBLIC CONCERN

6. Plaintiff was appointed by the Brooklyn Borough President as a member of old Community Board 8 in 1972 to the position of Community Board Member; and attained the position of Chairman of the newly redrawn Community Board 9 in December of 1979.

7. Plaintiff held the position of Chairman of the Board, of Community Board 9, continuously from December 1979 until 1994; and again from 1995 until 2014.

8. Eric Adams is presently the Brooklyn Borough President.

9. Prior to becoming Borough President, Eric Adams was a state senator.

10. Ingrid Lewis-Martin is presently the Senior Advisor to Eric Adams.

11. Laurie Cumbo is a New York City Council Member who is responsible for appointing a certain number of people the Community 9 Board.

12. Eric Adams, as Borough President, is entitled to appoint 25 people that he handpicked to the Community 9 Board.

13. Plaintiff has known Eric Adams since Adams was state senator, in his capacity as chairman of Community Board 9 (CB9) and as a community resident.

14. Eric Adams assumed his duties as Borough President of Brooklyn on January 20, 2014.

15. At the time Eric Adams assumed his duties as Brooklyn borough President, plaintiff was still Chairman of the Board (CB9).

16. Within a few weeks of Eric Adams assuming his Borough Presidency, plaintiff was approached by Ingrid Lewis-Martin (Senior Advisor to the Borough President), at which point she informed plaintiff the District Manager of Community Board 9, Pearl Miles, had to be terminated because of her age.

17. When plaintiff inquired as to why Pearl Miles needed to be terminated as District Manager, Ingrid Lewis-Martin responded that Pearl Miles was too old for the District Manager job and it was time for a change with younger blood.

18. Plaintiff, who is a Rabbi, responded by inquiring of Ingrid what basis she had to request Pearl's firing and specifically asked if there were any charges pending against Pearl, to warrant such a draconian remedy.

19. Ingrid Lewis-Martin's response to plaintiff's inquiry about whether there were any charges or performance based reasons to warrant Pearl Miles' termination, did not answer plaintiff's question. Rather, Ingrid Lewis-Martin just insisted that Pearl "had to go" and there is a new borough president.

20. Subsequent to that, around February or March of 2014, plaintiff had a meeting with Borough President, Eric Adams in Borough Hall.

21. At this meeting Eric Adams reiterated the same thing that Ingrid Lewis-Martin stated. Specifically, Eric Adams said Pearl Miles was too old for the job and "had to go".

22. Plaintiff again inquired as to what charges or misconduct formed the basis for Eric Adams' demand that Pearl Miles be fired.

23. Eric Adams refused to respond and stated "I am Borough President, what I say goes, and you listen to me."

24. Plaintiff responded by saying that he could not just summarily fire District Manager Pearl Miles without cause.

25. Eric Adams further stated that Miles had been around a long time, had to go; she was too old; and he wanted new blood.

26. Eric Adams further indicated to plaintiff that if he refused to fire Pearl Miles then he would not be reappointed as Chairman of the Board. Under the City Charter the Borough President appoints 25 members to the community Board, and Eric Adams threatened to misuse his power to prevent plaintiff from being reappointed as Chairman if plaintiff refused to acquiesce in this age motivated firing.

27. Eric Adams gave a direct threat that either plaintiff acquiesce in his demand to fire Pearl Miles because of her older age, or suffer retaliation.

28. Plaintiff Jacob Goldstein refused to fire Pearl, who he believed to be qualified, competent and efficient at her job. Plaintiff then walked out of Eric Adams office, refusing to play any role in a termination that was rooted in age animus.

29. Plaintiff ceased being Chairman of the Board in 2014, but continued as a regular board member.

30. In the meantime, Adams and Martin arranged to stack the Community Board 9 with appointees willing to remove Pearl Miles, and go along with defendants agenda to remove Miles due to her age.

31. After Eric Adams stacked the Board with his handpicked appointees willing to do his dirty work, the Board scheduled the termination of Miles for October 27, 2015- which termination was to be voted for at a public meeting.

32. In the wake of her scheduled termination, on October 27, 2015, Pearl Miles filed a federal action in the United States District Court Eastern District of New York against Eric Adams, Ingrid Lewis-Martin and several other defendants (Board Members who acquiesced in Adams and Martin's scheme to fire her because of age).

33. Plaintiff Jacob Goldstein provided Pearl Miles with an Affidavit attesting to the fact that Eric Adams and Ingrid-Lewis Martin had approached him and demanded he fire Pearl Miles because she was too old. Plaintiff's affidavit further specified that Eric Adams threatened retaliation; to wit, preventing plaintiff's reappointment as Chairman of Community Board 9, if plaintiff refused to cooperate in the age motivated termination of Pearl Miles.

34. Plaintiff provided this Affidavit to Pearl Miles in support of her federal claims for age discrimination with the knowledge that this affidavit would be filed with the United States District Court.

35. This Affidavit was filed on the US District Court's ecf system and became available for public viewing on the PACER system.

36. After this affidavit was filed and was exposed to the public, Jacob Goldstein was contacted by members of the press, including the New York Post.

37. Jacob Goldstein provided information to the New York Post with respect to the details set forth in his affidavit; to wit that the Brooklyn Borough President (Adams) and his Senior Advisor (Martin) had plotted to terminate Pearl Miles employment out of age animus and threatened retaliation if Jacob Goldstein

would not go along with their illegal scheme to oust a qualified employee because she was too old.

38. The New York Post and several other major newspapers published an article on Eric Adams and Ingrid Lewis-Martin's involvement in an age motivated termination of a City employee- Pearl Miles.

39. The New York Post and other papers obtained information for their article from Jacob Goldstein and/or the affidavit he wrote, which was filed with the Court.

40. Subsequent to Jacob Goldstein's disclosure that high ranking officials- including the Brooklyn Borough President (Adams) and his Senior Advisor (Martin) had schemed to fire Miles and effectuated her termination due to age animus- plaintiff suffered retaliation from Eric Adams and Ingrid Lewis-Marin.

41. In retaliation for plaintiff exposing the truth about age discrimination being perpetuated by high ranking state officials in the workforce, he was denied reappointment to Community Board 9.

42. Specifically, on May 18, 2016- when plaintiff was due to be reappointed to the Board for his 44th consecutive year, he received a letter from Ingrid Lewis-Martin.

43. That letter stated, in pertinent part, " On behalf of Brooklyn Borough President Eric Adams, I thank you for your service and efforts as a member of Community Board 9. As you know, Brooklyn is home to many caring and dedicated residents, and community boards are limited to 50 members. Your membership will not be renewed at this time as it is important that other devoted community residents be given an opportunity to make contributions as well."

44. The letter cited no misconduct on the part of plaintiff as a basis for removing him as a Board member from Community Board 9, and gave a pretextual excuse of "giving other residents the opportunity to sit on the board" as a concocted justification for plaintiff's removal. Meanwhile, he had been on the Board for 36 consecutive years and none of the borough presidents before Adams had ever felt the necessity to oust plaintiff so that other residents could sit in the Board.

45. The true motivation for Ingrid-Lewis Martin and Eric Adams removing plaintiff from the board was to retaliate against him for speaking out about a matter of public concern; to wit, age discrimination perpetuated by government officials Eric Adams and Ingrid Lewis-Martin.

46. At the earliest possible opportunity, Adams and Martin retaliated against plaintiff for speaking about a matter of public concern, by preventing his next reappointment to the Board and refusing to renew his membership on the Board.

47. Eric Adams, Ingrid Lewis-Martin were state actors who acted under color of state law when they acted in concert to retaliate against plaintiff for exercising his first amendment right to speak freely and openly to the press and court about matters of public concern- by refusing to reappoint him to the Board of the Community Board 9.

48. The refusal to reappoint plaintiff to the Community Board 9 because he exposed age discrimination being perpetuated by a public official, after 44 years of reappointments by every official who ever served as Borough President, was adverse employment action.

49. The first amendment right to speak about a matter of public concern is a clearly recognized right under the US Constitution and in the Second Circuit.

50. The speech at issue was protected and plaintiff's interest in exposing age discrimination being perpetuated by a public official was an interest protected by the First Amendment.

51. There was causal connection between plaintiff's protected speech and the adverse employment action taken against him, because defendants Adams and Martin's adverse employment actions were motivated and substantially caused by plaintiff's exercise of that right.

52. Defendant's actions in refusing to reappoint plaintiff to the Community Board 9, where he would be in a position to learn about and report any evidence of defendant's attempting to perpetuate further age discrimination or trying to cover their age motivated firing of Miles, chilled his free speech.

53. All of the aforementioned defendants engaged in conduct which was not objectively reasonable.

## SECOND CAUSE OF ACTION- DEFENDANT LAURIE CUMBO VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREE SPEECH BY ACTING IN CONCERT WITH ERIC ADAMS AND INGRID LEWIS-MARTIN

54. Plaintiff repeats and realleges all of the aforementioned allegations.

55. Prior to receiving a letter from Ingrid Lewis-Martin refusing to reappoint him to the Community Board 9 (letter dated May 18, 2016), plaintiff expected some form of retaliation after providing an Affidavit to Pearl Miles and cooperating with the press to expose Adams and Martin's age discrimination scheme.

56. In anticipation that defendants Adams and Martin were plotting to remove him from the Board of Community Board 9, as retaliation for him exposing their age related firing of District Manager Pearl Miles, Jacob Goldstein contacted Lauri Cumbo in February of 2016.

57. Plaintiff met with Laurie Cumbo for the purpose of requesting she appoint him to the Board, knowing Adams and Martin would conspire to remove him (which they did via the May 18, 2016 letter).

58. Laurie Cumbo, a New York City council member, had the right to appoint a designated number of people to the board of Community Board 9, while Eric Adams had the ability to appoint 25 of the 50 members.

59. Plaintiff knew that the only way he would be able to remain on the board, despite Adams and Martin's inevitable retaliatory attempts to remove him, would be if Laurie Cumbo would re-appoint him directly.

60. On February 10, 2016 plaintiff met with Laurie Cumbo in her office at 250 Broadway, in Manhattan- requesting she re-appoint him to the board directly.

61. Plaintiff indicated he needed to submit paperwork to the Borough President's office, reflecting her reappointment of him, before midnight on February 11th.

62. Cumbo indicated she just needed to make a call before recommending his appointment to the Borough President and that she would get back to him on her decision forthwith; at which point plaintiff knew she was calling the Borough President to discuss the issue.

63. Cumbo never got back to plaintiff before the deadline for him to submit his paperwork to the Borough President's Office, and plaintiff therefore submitted his

paperwork timely, but had no choice but to seek reappointment by the Borough President, Eric Adams.

64. It was not until the deadline for submission of paperwork had passed that Lauri Cumbo notified plaintiff of her refusal to reappoint plaintiff, after discussions with the Borough President's Office.

65. Cumbo acted in concert with Eric Adams and Ingrid-Lewis Martin to oust plaintiff from the Board by creating insurmountable obstacles to his reappointment and closing the only avenue he had left to reappointment- other than relying on Eric Adams to reappoint him to the Board (as Borough Presidents had done for the past 44 years with respect to plaintiff's membership on the Community Board 9)

66. Laurie Cumbo acted in concert with Eric Adams and Ingrid Lewis-Martin in refusing to reappoint Jacob Goldstein to the Community Board 9, in retaliation for plaintiff exercising his first amendment right to speak about a matter of public concern- which is is a clearly recognized right under the US Constitution and in the Second Circuit.

67. Plaintiff's exercise of his first amendment right to disclose age discrimination at the highest levels of local government; to wit, the Borough President's Office, was the proximate cause and substantial motivating factor for Cumbo and her accomplices (Adams and Martin) to close every avenue plaintiff had to reappointment to the Community Board 9.

68. The speech at issue was protected and plaintiff's interest in exposing age discrimination being perpetuated by a public official was an interest protected by the First Amendment.

69. Defendant Cumbo, Adams, and Martin's actions in refusing to reappoint plaintiff to the Community Board 9, where he would be in a position to learn about and report any evidence of defendant's attempting to perpetuate further age discrimination or trying to cover up their age motivated firing of Miles, chilled his free speech.

70. Cumbo and her accomplices, Adams and Martin, engaged in conduct which was not objectively reasonable.

71. The First Amendment and the right to be free from retaliation for exercising the right to free speech is a recognized right in the Second Circuit.

72. Cumbo was a state actor acting under the color of state law when she conspired and agreed with co-defendants Abrams and Martin to prevent plaintiff's reappointment to the Board, after his exposure of age discrimination by government officials, by any means possible.

73. Cumbo's actions were not objectively reasonable.

74. All defendants actions were intentional and malicious.

75. All defendants have caused plaintiff to suffer compensatory damages, inclusive of attorneys fees and court costs in the amount of $8,100 (which continue to accrue).

76. All defendants are liable to plaintiff for punitive damages, stemming from their malicious and retaliatory conduct, in the amount of 20 million dollars.

77. All defendants are liable to plaintiff for emotional damages for the pain, suffering, anxiety, stress and emotional turmoil they have caused him to suffer in the amount of $20 million dollars.
78. Plaintiff demands trial by jury.

## INJUNCTION

79. Plaintiff repeats and realleges all of the aforementioned allegations.
80. Plaintiff seeks to regain his position on Community Board 9, from which he has been unlawfully removed via all named defendants' refusal to re-appoint him in the wake of his public disclosure of age discrimination by Adams and Martin.
81. Plaintiff will suffer irreparable harm if an injunction does not issue, since he will never be able to overcome the obstacles defendants have placed in his way of getting re-appointed to the Community Board- which defendants have created to avenge plaintiff's disclosure of their age discrimination scheme against city worker Pearl Miles
82. Plaintiff has no remedy at law, since he seeks to be reappointed to the position he was unlawfully removed from, as set forth above.
83. The balancing of the equities favor the court intervening to protect the status quo- by restraining defendant from retaliating against plaintiff via refusing to renew his appointment to the Board of Directors after 44 years of dedicated service and compelling the defendants to reappoint him the position he has occupied for the past 44 years.

84. Defendants will suffer no harm or prejudice by having to reappoint plaintiff and refrain from retaliating against him for his disclosure of a matter of public concern.

85. Plaintiff is likely to succeed on the merits of this action, since there is irrefutable evidence he supplied an affidavit against defendants related to their age discrimination and disclosed the same to the press before all defendants refused to reappoint him to the Board for his 45th consecutive year.

86. Plaintiff seeks an injunction preventing all defendants from retaliating against him by refusing to reappoint him to the Community Board 9, for disclosing matter of public concern; to wit, age discrimination by public officials. Plaintiff also seeks and injunction compelling them to reinstate him as a member of the Community Board 9.

87. WHEREFORE, plaintiff seeks an injunction; compensatory damages in excess of $8,100-since these damages continue to accrue; punitive damages in the amount of $20 million; and emotional damages in the amount o $20 million.

Dated: New York, New York
July 5, 2016

TAMARA HARRIS, ESQ.
The Law Office of Tamara M. Harris
111 Broadway, Suite 706
New York, New York 10006
(212) 334-1050

## VERIFICATION

I, Jacob Goldstein, depose and swear the following to be true under penalty of perury:

I am the Plaintiff in the above-entitled action. I have read the foregoing Verified Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matter, I believe them to be true.

JACOB GOLDSTEIN

SWORN TO BEFORE ME THIS ___ DAY

OF JULY 2016

NOTARY PUBLIC

RODERICK J. WALTERS
Notary Public, State of New York
No. 02WA4786568
Qualified in Westchester County
Commission Expires Dec 13, 20 17